## CLEVELAND STATE BANK et al. v. GARDNER et al. (No. 1189.)

(Court of Civil Appeals of Texas. Beaumont. June 4, 1925. Rehearing Denied June 24, 1925.)

**1. Trespass to try title ⬤➾1—Allegations showing cloud on plaintiffs' title, by reason of defendants' asserted claim incidental to main suit.**

In action in trespass to try title, allegations of mistake to show cloud on plaintiffs' title, cast by reason of defendants' asserted claim, were incidental to main suit, and were proper.

**2. Vendor and purchaser ⬤➾261(4) — Notes acquired when past due subject to all defenses that maker could urge against original holder.**

Vendor's lien notes, acquired when past due, are subject to all defenses and equities that could be urged by maker against them in hands of original holder.

**3. Bills and notes ⬤➾349—Person taking note outstanding after maturity put on inquiry as to defenses which may exist against it.**

Note outstanding after maturity is wholly dishonored, and person taking it is put on inquiry as to defenses and equities which may exist against it.

**4. Vendor and purchaser ⬤➾261(4)—Purchaser of vendor's lien notes held to have acquired no title to tract mistakenly included in deeds.**

Where, at time defendant purchased vendor's lien notes, tract of land mistakenly included in description of deed to larger tract covered by notes, was in possession of plaintiff, holding under a valid deed from another, and proper inquiry by defendant would have brought to it notice of mistake in deed, *held* that defendant acquired no title thereto by judgment in foreclosure suit.

**5. Vendor and purchaser ⬤➾261(4)—Purchaser of vendor's lien notes acquired no better title than vendor.**

Title or claim to land of purchaser of vendor's lien notes could be no better than was title of vendor.

**6. Covenants ⬤➾33—No breach of covenant as to land mistakenly included, and for which no consideration paid or received.**

A breach of covenant of title does not exist, where, by mutual mistake of parties in description of land conveyed, a certain tract was

included therein, but no consideration was either paid or received therefor.

**7. Covenants ⬥106 — Intermediate owner without right of action for breach of covenant, where vendee has sought no recovery against him.**

Defendant, who prior to suit, sold land to another, has no right of action for breach of covenant, where vendee has asked no recovery against defendant.

Appeal from District Court, San Jacinto County; J. L. Manry, Judge.

Action in trespass to try title by Ralph Gardner and another against the Cleveland State Bank and another, wherein named defendant filed cross-action over against J. C. Falvey and others. Judgment for plaintiffs, and in favor of defendants in cross-action, and defendants Cleveland State Bank and another appeal. Affirmed.

W. L. Hill and Jno. C. Randolph, both of Houston, and E. W. Love, of Cleveland, for appellants.

J. M. Hansbro, of Cold Springs, J. A. Platt, of Houston, A. L. Kayser, of Conroe, and J. Llewellyn, of Liberty, for appellees.

O'QUINN, J. This is a suit in trespass to try title to 160 acres of land, a portion of the Joaquin Fernandez de Rumayor grant in San Jacinto county, Tex., by Ralph Gardner and Elmer Gardner against the Cleveland State Bank and E. L. Bramlette, active vice president of said bank.

The plaintiffs' original petition, filed July 28, 1922, was in the regular form, and contained the usual allegations of a simple trespass to try title suit, with prayer for judgment for title and possession.

The defendants Cleveland State Bank and Bramlette, each filed answer September 30, 1922, of general demurrer, general denial, and plea of not guilty.

On March 6, 1923, the defendant Cleveland State Bank filed its amended answer and cross-action, pleading as before a general demurrer, general denial, and plea of not guilty, and by way of cross-action over against J. C. Falvey, T. S. Falvey, and C. B. Granbury on their warranties in prior conveyances to the land in controversy. Said defendant, in said amended answer, by way of cross-action, also sued the plaintiffs, the Gardners, in trespass to.try title for the title and possession of the 160 acres of land in controversy, and for damages and rental value of the land in the sum of $5,000 per year.

The Falveys, defendants in cross-action, answered May 19, 1924, by general demurrer, special exceptions, general denial, and specially:

"(6) Further specially answering herein, these defendants come and say: That on or about the ⸺ day of ⸺, 19—, they purchased certain lands from the R. C. Miller Lumber Company by deed of that date. The field notes set out in said conveyance and describing the first tract embraced about 1,957 acres. That there was excepted and excluded in and by the terms of said conveyance the 160 acres of land sued for by the defendant herein and described in his petition, leaving in said tract and conveyed· by said deed about 1,797 acres as therein recited. That thereafter these defendants sold the land purchased by them under said deed from the R. C. Miller Lumber Company to the defendant C. B. Granbury, using the same field notes as were used in the conveyance to them but by mutual mistake of the parties to said last-mentioned deed, said 160 acres was not excepted or excluded therefrom. That the said Granbury only purchased from these defendants, and these defendants only intended to convey to the said Granbury, the lands that they had acquired under the deed from said Miller Lumber Company, and these defendants received no consideration whatever for said 160 acres. of land herein sued for. That they nor the said Granbury have ever laid any claim or have ever had any title to the said 160 acres of land. That these defendants have never received any consideration whatever for the contract of warranty upon said 160 acres of land and the contract of warranty so far as the same is sought to be applied to said 160 acres herein sued for is wholly *without consideration*, and said 160 acres was included therein as above shown, by mutual mistake; and therefore there has been no brach of any covenant. of warranty thereto on the part of these defendants.

"(7) And these defendants further say that their codefendant, the Cleveland State Bank, had and has at the time it acquired whatever rights it may have in the premises actual and constructive knowledge and notice of said mistake hereinabove set out, and of the want of consideration to support said contract of warranty as above mentioned, and had actual and constructive knowledge and notice of such facts as would put an ordinarily prudent person upon inquiry, which inquiry duly prosecuted would have disclosed said facts.

"(8) And for further special answer herein these defendants say that said land so sold and conveyed by these defendants to the defendant C. B. Granbury was thereafter by him sold and conveyed by the same description under which he purchased from these defendants to one Ed Cochran, and by the same error and mistake said 160 acres was not excepted from the terms of said deed; that the grantee Cochran had theretofore acquired the title to said 160 acres from and under the Miller Lumber Company, and all titles and claims to all of the land were merged in him; that the defendant the Cleveland State Bank purchased after maturity the vendor's lien notes growing out of the sale of the said land by the said Granbury to Ed Cochran, and thereafter foreclosed the same and became the purchaser at the foreclosure sale; that at the time said notes were given, said Ed Cochran was the owner of the fee-simple title to the 160 acres of land herein sued for; that, after the purchase of said land by Cochran from the defendant Granbury, and after the issuance by the said Cochran of the

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

vendor's lien notes under and by virtue of and through which the Cleveland State Bank claims title to the land sued for by the plaintiff, and while the said Ed Cochran was the owner of the fee-simple title to the land, he (the said Ed Cochran) sold and conveyed the 160 acres in question and involved in this suit to the plaintiff Gardner, and under which conveyance he now holds.

"(9) And these defendants further specially answering herein come and say that the defendant's Cleveland State Bank's cause of action upon said warranty asserted in its cross-bill against these defendants, if any, it has, which is not admitted, but denied, is barred by the statute of limitation of four years, for that said cause of action, if any it has, accrued more than four years next before the filing of said cross-action herein, and these defendants here now plead said statute of four years' limitation in bar of any recovery against these defendants herein."

Cross-defendant C. B. Granbury, May 19, 1924, answered by general demurrer, general denial, and specially:

"First. That on or about the 21st day of November, 1918, by deed of that date recorded in book 13, p. 159, of the Deed Records of San Jacinto county, Tex., he conveyed to Ed Cochran, of San Jacinto county, Tex., two certain tracts or parcels of land, situated partly in Liberty county and partly in San Jacinto county, in the state of Texas, and of which lands that certain tract of 160 acres described in the cross-action of defendant Cleveland State Bank is a part and parcel. The said lands were conveyed by this defendant to said Ed Cochran at the sum and price of $13.75 per acre, which the said Ed Cochran agreed and contracted to pay this defendant but this defendant here specially denies that said Ed Cochran, or any one for him, ever paid to this defendant any sum of money whatever for the 160 acres of land described in the pleading of the defendant Cleveland State Bank, and that therefore there has been no breach of any covenant of warranty on the part of this defendant. This defendant expressly denies that the lands conveyed by said deed to Ed Cochran were sold in bulk, but he says that the same were conveyed for the price of $13.75 per acre, which the said Ed Cochran promised and agreed to pay, but in truth and in fact no part of said agreed consideration was ever actually paid to this defendant for the 160 acres described in the cross-action of said Cleveland State Bank.

"Second. This defendant says further that, if there was any breach of the covenant of warranty on his part, as alleged by said Cleveland State Bank, the same occurred more' than four years prior to the institution of this suit against this defendant, and more than four years before the filing of the cross-action against him by said Cleveland State Bank, and this defendant here now pleads the four years' statute of limitation against the cause of action asserted against him by said Cleveland State Bank, if any it had, against this defendant accrued more than four years before the commencement of this suit against this defendant, and the same is barred by limitation, and this he is ready to verify."

And, by way of cross-action, pleaded over against J. C. Falvey and T. S. Falvey on their warranty to him of the land sold by them to him, and prayed that, in the event judgment was rendered against him on his warranty, he have judgment over against them for the amount of the judgment so adjudged against him. .

The cross-defendants J. C. Falvey and T. S. Falvey answered the cross-action of Granbury by general demurrer and general denial.

On the same date, May 19, 1924, the plaintiffs, the Gardners, filed their amended original petition, containing the original averments of trespass to try title to the 160 acres of land described in their original petition, and then alleged that on November 26, 1917, one Jeff Cochran conveyed the 160 acres of land in controversy to Ed Cochran; that October 30, 1913, J. C. and T. S. Falvey conveyed to C. B. Granbury certain lands adjoining the 160 acres in controversy, and, by mistake, the scrivener, in drawing the deed, included the 160 acres; that the Falveys did not intend to sell, nor Granbury to buy, same; that neither the Falveys nor Granbury ever owned or claimed any title to or interest in said 160 acres; that November 21, 1919, Granbury conveyed the lands actually purchased by him from the Falveys, with certain exceptions, to Ed Cochran, and that, by mistake, the scrivener, in drawing this deed, included said 160 acres; that Granbury did not intend to convey to Cochran, and Cochran did not intend to buy from Granbury, the 160 acres, for that at the time Cochran had good and perfect title thereto; that in, said deed from Granbury to Cochran a vendor's lien was retained to secure the payment of certain notes executed by Cochran as a part of the consideration for the land conveyed by Granbury to Cochran; that Granbury never received, had, or held, and did not intend to receive, have, or hold, any lien on the 160 acres of land in controversy, nor did Cochran intend to give to Granbury any lien on said 160 acres of land, by his acceptance of the deed from Granbury to him, or by the execution and delivery of the vendor's lien notes to Granbury, but that, in so far as the said deed from Granbury to Cochran and the notes from Cochran to Granbury purported to give and grant unto Granbury any lien on the 160 acres of land, the same was the result of a mistake on the part of both Granbury and Cochran or the scrivener drawing said deed and said notes; that, in so far as the deed from Granbury to Cochran purported to convey the 160 acres of land, and in so far as the notes in said deed mentioned purported to give and grant Granbury a lien on the 160 acres of land, same were without any consideration; that neither the Falveys nor Granbury ever claimed or asserted any character of title what-

ever to the 160 acres of land, nor did Granbury assert any claim or right thereto by virtue of the notes given him by Cochran, but that the Falveys and Granbury all the time recognized the right and title of Cochran and the plaintiffs, the Gardners, thereto; that all of said deeds had been placed of record in San Jacinto county, and that for the first time the Cleveland State Bank and Bramlette, on or about July 1, 1922, commenced to assert title to said 160 acres by reason of same being included in the description contained in the deed from the Falveys to Granbury, and from Granbury to Ed Cochran, the same having been included by mistake; that said bank and Bramlette claimed to have acquired title to said 160 acres under and by virtue of the lien retained in the Granbury deed to Cochran, and to have and to hold title thereto through foreclosure proceedings foreclosing said lien, and that plaintiffs were not parties to said suit; that the sheriff's deed, claimed by said bank and Bramlette to have been authorized by a judgment foreclosing the said lien in said notes, included the 160 acres of land in its description of the lands thereby conveyed; that said sheriff's deed had also been placed of record, and that by reason of the asserted claim of title to said 160 acres made by said bank and Bramlette, a cloud had been cast upon the title of the plaintiffs; that plaintiffs, the Gardners, and those under whom they held, had and held actual possession of the 160 acres of land, cultivating, using, and enjoying the same, of which the defendants, the said bank and Bramlette, had actual notice and knowledge, and that said defendants were not innocent purchasers for value of said premises, or of any right, title, or interest in or to same, and prayed for judgment for the title and possession of the land; that their title to same be quieted, and the cloud cast upon same by the wrongful claim of defendants be removed, and for relief generally.

On the same date, May 19, 1924, plaintiffs, by supplemental answer to the cross-action of defendants, pleaded general demurrer, general denial, plea of not guilty, and specially all the facts set forth in their amended petition, and prayed for judgment as in their amended petition.

To plaintiffs' amended petition and supplemental petition, the defendants, Cleveland State Bank and E. L. Bramlette, replied by supplemental answer, a general demurrer, special exception to that part of plaintiffs' amended petition setting up mistake in the description of land in deeds, to the effect that, if said pleading was intended to correct an alleged mistake, it was insufficient, a general denial, and limitation of four years against correction of deed.

The case was tried before the court without a jury, and judgment rendered in favor of plaintiffs for the land in controversy, and in favor of the warrantors vouched in, that the defendant Cleveland State Bank take nothing as against them. The case is before us on appeal.

At the request of appellants, the court made and filed his findings of fact and conclusions of law, which are as follows:

### "Findings of Fact.

"That on the 8th day of December, A. D. 1916, R. C. Miller Lumber Company was the owner of by good and perfect title 1,957 acres of land in the J. F. De Rymayor grant, located in San Jacinto county, Tex., which included the land sued for by plaintiffs in this case. That on said date R. C. Miller Lumber Company legally conveyed said land, to wit, said 160 acres in controversy herein, to one Jeff Cochran, who thereafter, on the 26th day of November, A. D. 1917, conveyed said 160-acre tract of land to Ed Cochran, who, on the 1st day of April, A. D. 1920, conveyed the same to Ralph and Elmer Gardner, plaintiffs in this case, all of said conveyances being legal in form, duly executed and delivered, and promptly recorded in the Deed Records of San Jacinto county, Tex., and, because of said conveyances aforesaid, said Ralph and Elmer Gardner became and were the owners and have held good fee-simple title thereto from said last-mentioned date up to the present time, and that they and their predecessors in title, since the year 1916, have had actual possession thereof, having the major portion of the same actually inclosed, cultivating, using, and enjoying same continuously up to the present time.

"That on the 9th day of July, A. D. 1918, R. C. Miller Lumber Company conveyed to J. C. and T. S. Falvey all of said 1,957 acres of land in said Rymayor grant, except the 160 acres of land above referred to, that had theretofore been conveyed to Jeff Cochran by said R. C. Miller Lumber Company. That on the 30th day of October, A. D. 1918, the said J. C. and T. S. Falvey made, executed, and delivered to C. B. Granbury a deed of conveyance purporting to convey all of the land theretofore conveyed to them by the R. C. Miller Lumber Company, and, by mutual mistake on the part of the said C. B. Granbury and the scrivener drawing said deed, included in the description of said deed the 160 acres of land now in controversy. That the said Falveys never owned, claimed, or asserted any right, title, or interest in the 160 acres now in controversy, and did not intend, by the execution of said deed to convey the same to the said C. B. Granbury, and the said C. B. Granbury did not intend to purchase said land from the said Falveys, paid nothing therefor, and never, in fact, at any time, owned, claimed or asserted any right, title, or interest therein or thereto.

"That thereafter, on the 21st day of November, A. D. 1918, the said C. B. Granbury, by deed of that date, purported to convey certain lands out of the land purchased by him from the said Falveys to one Ed Cochran, and, by mutual mistake on the part of the said C. B. Granbury, Ed Cochran, and the scrivener drawing said deed, included in the description therein the 160 acres of land in controversy in this suit. That the said Ed Cochran at and before the date of said deed from the said C. B. Gran-

bury to him had and held good and perfect title to said land. That the said C. B. Granbury did not intend to convey to Ed Cochran by said deed any right, title, or interest in said 160-acre tract, nor did the said Ed Cochran intend to purchase from said Granbury any right, title, or interest therein. That the said C. B. Granbury did not purpose or intend to hold any character of lien on the 160-acre tract to secure the payment of the purchase-money notes executed by the said Ed Cochran payable to the said Granbury in part payment for the land actually conveyed to him by the said Granbury, nor did the said Ed Cochran, by receiving said deed and executing the vendor's lien notes described therein, intend to give or grant to the said Granbury any kind or character of lien on the 160 acres of land in controversy.

"That, after the maturity of the vendor's lien notes of date the 21st day of November, A. D. 1918, executed by Ed Cochran to C. B. Granbury, the said C. B. Granbury assigned and transferred the same to defendant Cleveland State Bank. That when the said Cleveland State Bank received said notes it well knew, or, by the use of reasonable and proper diligence, could have known, that a mutual mistake had been made by each of the parties to the deeds from J. C. and T. S. Falvey to C. B. Granbury and from C. B. Granbury to Ed Cochran, when said 160 acres was included in the descriptions contained in said deeds, and that the said Granbury never intended by said deed to convey said 160-acre tract to the said Ed Cochran, or to retain any character of lien thereon to secure the payment of said vendor's lien notes; nor did the said Cochran intend to purchase said 160 acres of land from the said Granbury, or to give to the said Granbury any character of lien thereon. That the said Cleveland State Bank, after acquiring said notes, brought suit to foreclose the same against the said Ed Cochran, but did not make parties to said suit the said C. B. Granbury or Ralph and Elmer Gardner, who were then in actual, open possession of said land, holding same under a deed from Ed Cochran as aforesaid. That under a judgment rendered in said cause an order of sale was issued, and the sheriff of San Jacinto county purported to sell 'all of the estate, right, title, and interest which the said Ed Cochran had on the 15th day of May, A. D. 1922, or at any time afterwards, of, in, and to' the land purported to be conveyed in the deed made by said sheriff on the 5th day of July, 1922, which deed in its description included the 160 acres of land in controversy in this suit. That Ed Cochran, nor any one for him, ever paid to C. B. Granbury any sum of money whatever for the 160 acres of land in controversy. That the land sold by Granbury to Ed Cochran was sold at the price of $13.75 per acre, but no part of the agreed consideration was ever paid or promised to be paid to Granbury for the 160 acres of land in controversy. That neither Ed Cochran nor these plaintiffs at any time ever recognized any right, title, or interest in C. B. Granbury to the 160 acres of land in controversy herein, but ever had and held actual possession thereof adverse to any time ever asserted or apparent in either the Falveys or the said C. B. Granbury. That no consideration was paid or promised to be paid by C. B. Granbury to J. D.

and T. S. Falvey for the purported conveyance of the 160 acres of land in controversy described in said deed from the said Falveys to the said Granbury; nor was there any consideration paid or promised to be paid to the said Granbury for any covenant of warranty contained in said deed. That no consideration was paid or promised to be paid by the said Ed Cochran to C. B. Granbury, for the purported conveyance to him of the 160 acres of land in controversy, described in said deed from the said Granbury to the said Cochran; nor was there any consideration paid or promised to be paid to the said Granbury by the said Cochran for any covenant or warranty contained in said deed. That Cleveland State Bank and E. L. Bramlette had, at the time the Cleveland State Bank acquired said notes, actual and constructive knowledge and notice of the facts above set out, or had actual and constructive knowledge and notice of such facts as would put an ordinarily prudent person upon inquiry, which inquiry, duly pursued, would have disclosed said facts. That soon after receiving the deed above mentioned from the sheriff of San Jacinto county, Tex., the Cleveland State Bank and E. L. Bramlette commenced to claim and assert some character of title to the land in controversy herein, which asserted claim, taken in connection with the placing of record the deeds heretofore mentioned, containing the mistake in the descriptions as aforesaid, constituted a cloud on plaintiffs' title to the land in question. Subsequent to said sheriff's deed, Cleveland State Bank conveyed such title as it acquired to E. L. Bramlette.

### "Conclusions of Law:

"Based on the facts above, I conclude that the plaintiffs, as against Cleveland State Bank and E. L. Bramlette, are entitled to recover in this action the title to and possession of the land and premises sued for herein by them, and that there has been no breach of any covenant of warranty of title contained in either of the deeds executed by the said Falveys to Granbury or from Granbury to Cochran, so that the defendant Cleveland State Bank has no cause of action as against either J. C. and T. S. Falvey or the said C. B. Granbury, and that the plaintiffs are entitled to a judgment against Cleveland State Bank and E. L. Bramlette quieting their title and removing the cloud thereon above mentioned, and that the defendant Cleveland State Bank should take nothing by its suit herein as against either C. B. Granbury or J. C. and T. S. Falvey, and that plaintiffs Ralph and Elmer Gardner and cross-defendants J. C. and T. S. Falvey and C. B. Granbury should have and recover of and from Cleveland State Bank and E. L. Bramlette all costs in this behalf expended, and judgment herein has been accordingly entered."

The court's findings of fact are amply supported by the record, and we here adopt same.

[1] Appellant's first assignment of error is that the court erred in rendering judgment for plaintiffs for the land in controversy, because the plaintiffs' cause of action was one to correct certain deeds, and that such action was barred by the statute of four years' limitation.

The assignment is overruled. The action was one in trespass to try title, and is so recognized and stated in the first paragraph of appellant's brief. The allegations of mistake to show cloud on plaintiffs' title, cast by reason of appellant's asserted claim, were incidental to the main suit in trespass, and were proper. There was no prayer by plaintiffs for the correction of any deed.

Appellant's second and third assignments of error assert that the court erred in rendering judgment for plaintiffs for the land, because the evidence shows that appellees have no title to the land, but that the undisputed evidence shows that the title to the land is in appellant.

The R. C. Miller Lumber Company is the common source of title. The facts are without dispute. The R. C. Miller Lumber Company owned a tract of 1,967 acres of land, which included the 160 acres in dispute. December 8, 1916, it conveyed the 160 acres out of the 1,957-acre tract to Jeff Cochran, by deed describing same by metes and bounds, which deed was placed of record January 15, 1917. November 26, 1917, Jeff Cochran conveyed said 160 acres to his son, Ed Cochran, by deed, fully describing same, which deed was recorded November 28, 1917. April 1, 1920, Ed Cochran conveyed the 160 acres to appellees, Ralph Gardner and Elmer Gardner, by deed fully describing same, which deed was recorded June 4, 1920. At the time the lumber company sold the land to Jeff Cochran, it was improved and in possession of tenants of the owner. Jeff Cochran, when he purchased same, took possession, and continued, through his tenants, to use and enjoy the land. When he sold to Ed Cochran, Ed Cochran took possession, and through tenants continued to cultivate, use, and enjoy same. When Ed Cochran sold to appellees, the Gardners, they immediately took possession and continuously occupied, cultivated, and used same. The Miller Lumber Company sold the remainder of the 1,957-acre tract on March 15, 1918, to the Falveys, but, in drawing the deed, the description of the entire 1,957 acres was given. However, the contents of the tract conveyed was recited to be 1,797 acres; that being the amount after deducting the 160 acres, evidencing the intent not to include or convey the 160 acres. Later, July 9, 1918, discovering that the 160 acres had not been excepted from said 1,957-acre tract by metes and bounds, and wishing to correct the apparent error in the description in their deed to the Falveys of March 15, 1918, the Miller Lumber Company executed another deed, expressly reciting that it was for the purpose of correcting said description, and therein expressly and by metes and bounds excepted from said deed out of said 1,967-acre tract the 160 acres in dispute, and the conveyance again recited that 1,797 acres were conveyed. The Falveys

274 S.W.—15

accepted said deed and placed same of record July 15, 1918. October 30, 1918, the Falveys sold this tract of 1,797 acres to C. B. Granbury, but in drawing the deed followed the description of the 1,957 acres in the Miller deed, and failed to expressly exclude the 160 acres, but recited that 1,797 acres were conveyed, showing that the 160 acres were not included, and were intended to be and were excepted from the tract. November 21, 1918, Granbury sold the 1,797-acre tract, less certain small tracts out of same that had been sold to other parties, to Ed Cochran, following the description in the Falvey deed, and reciting that it contained 1,797 acres, less the reservation sold to others, and as part payment Ed Cochran executed to Granbury three vendor's lien notes for $4,-865.44 each, and payable on November 21, 1919, November 21, 1920, and November 21, 1921, respectively. March 26, 1921, Granbury duly transferred note No. 2 to appellant Cleveland State Bank. On January 3, 1922, Granbury transferred note No. 3 to appellant Cleveland State Bank. Both of these were transferred after maturity and without recourse on Granbury.

Appellant Cleveland State Bank brought suit on the notes against Ed Cochran, not making appellees parties to the suit, obtained judgment, and the land was sold under foreclosure of the lien retained in the notes, and was bought in by the bank, which is now contending that said 160 acres were a portion of the land sold under foreclosure.

[2, 3] The notes being past due when acquired by appellant Cleveland State Bank, they were subject to all defenses and equities that could be urged by the maker against them in the hands of the original holder. Walker v. Wilson, 79 Tex. 185, 14 S. W. 798, 15 S. W. 402. It has been held that a note outstanding after maturity is wholly dishonored, and persons who take it are put upon inquiry as to defenses and equities which may exist against it. Diamond v. Harris, 33 Tex. 635.

[4] The court found that the 160 acres were included in the description of the land conveyed in the deed from the Falveys to Granbury by mutual mistake of the parties; and that when Granbury conveyed the land to Ed Cochran, by mutual mistake of the parties, the 160 acres were included, following the description in the deed from the Falveys to Granbury. We think the record amply sustains these findings. The Falveys knew they had no title to the 160 acres. They never made any claim to same, and did not intend to convey same to Granbury. Their deed from the lumber company specifically excepted the 160 acres from the tract described, and stated that 1,797 acres out of the 1,957 acres were conveyed to them. This deed was of record, and notice to Granbury of what was contained in the descrip-

tion. He, thus knowing that only 1,797 acres were conveyed to the Falveys, did not intend to buy from the Falveys the 160 acres, nor 1,957 acres, but only the 1,797 acres described in the Falveys deed, and never at any time owned, claimed, or asserted any title, interest, or claim to the 160 acres. Ed Cochran knew, at the time he purchased from Granbury, that he already had a good and perfect title to the 160 acres. He did not intend to buy same from Granbury, for the reason that he already owned it, and Granbury, having no title to same, did not intend to and did not convey to Ed Cochran any interest or claim whatever in or to said 160 acres, nor did Granbury intend to receive or hold any lien of any character on said land.

The intention of the parties must control in determining what land was actually sold by the Falveys to Granbury and by Granbury to Cochran. At the time that appellant Cleveland State Bank acquired the notes, it was charged with full knowledge of the mistake made by the parties in the deed from the Falveys to Granbury and from Granbury to Ed Cochran, when said 160 acres of land were included in the description in said deeds of the land therein conveyed, for all of the deeds above described were of record, and constituted notice of their contents, and proper inquiry would have brought to appellant notice of all the facts, and therefore it should be held that it knew that the Falveys did not intend to sell to Granbury, and that he did not intend to buy, said 160 acres of land, and that Granbury did not intend to convey to Ed Cochran said 160 acres, or to retain any character of lien thereon, and that Ed Cochran did not intend to purchase said 160 acres from Granbury, or to give him any character of lien thereon. Furthermore, appellant Cleveland State Bank must be held to have had full knowledge of all the facts above stated, for in that, when it purchased said notes, the Gardners had purchased said 160 acres of land from Ed Cochran, and were in actual possession of same, holding under and by virtue of a deed from Ed Cochran, which was of record, and thus it had both actual and constructive notice that the Gardners were the owners of the land. Mullins v. Wimberly, 50 Tex. 457; Laufer v. Moppins, 44 Tex. Civ. App. 472, 99 S. W. 109; Watkins v. Edwards, 23 Tex. 443; Paris Gro. Co. v. Burks, 101 Tex. 111, 105 S. W. 174; Ramirez v. Smith, 94 Tex. 190, 59 S. W. 258. Moreover, appellant Bramlette, whose testimony shows that he was the active vice president of appellant bank, and managed its affairs, testified that on the trial of the suit on the notes for foreclosure, and before judgment was rendered, it was disclosed that the Gard-

ners had bought the land from Cochran, and were in possession under a deed from him of record. Notwithstanding all this notice, said appellant purchased the notes, brought suit to foreclose the lien, not making the Gardners parties to the suit, obtained judgment, and at foreclosure sale bought in the land, and now asserts that it has the superior title to the land.

[5] The title or claim to the land of appellant Cleveland State Bank could be no better than was the title of Granbury. Granbury did not have the superior title, because he had never owned it. He could not have a vendor's lien on land that he had never owned or sold. If, in a suit of trespass to try title against appellees, he had sought to disaffirm his sale to Cochran, he could not have recovered the land from appellees, because the superior title to the 160 acres, under the description in his deed from the Falveys, never vested in him. If he had not sold the notes to appellant, but had held them and sought to foreclose his lien against the land himself, it would have been a sufficient answer to his suit to have shown that he had not, in fact, sold the 160 acres to Cochran, and had not intended to retain a lien thereon to secure his debt. The facts do not sustain appellants' contention, and the assignments are overruled.

[6, 7] Appellants' fourth assignment of error complains that the court erred in not rendering judgment in favor of appellants against the Falveys and Granbury on their warranties.

We think the assignment should be overruled, because (1) the record shows, and the court found, that the deed from the Falveys to Granbury and from Granbury to Cochran by mutual mistake of the parties in the description of the land conveyed, included the 160 acres in controversy, and that neither the Falveys nor Granbury paid or received any consideration for said 160 acres, and therefore there could be no breach of the covenants. Laufer v. Moppins, 44 Tex. Civ. App. 472, 99 S. W. 109. (2) It appears from the record that, after the appellant Cleveland State Bank bought in the land under foreclosure sale, and before the institution of this suit, if it should be that the 160 acres were included in the land sold, it sold same to appellant E. L. Bramlette, and, he not having asked a recovery against his vendor, the Cleveland State Bank, the court did not err in refusing to render judgment for either of the appellants. McPike, v. Smith (Tex. Civ. App.) 209 S. W. 815; Wiggins v. Stephens (Tex. Com. App.) 246 S. W. 84 (86).

No error appearing, the judgment is affirmed.